IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

QUADALE D. COLEMAN,
       Petitioner,

           v.

UNITED STATES OF AMERICA,
       Respondent.

OPINION AND ORDER

10-cv-736-wmc

---

On November 22, 2010, petitioner Quadale D. Coleman filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct the prison sentence that he received in *United States v. Coleman*, Case No. 07-cr-80-jcs (W.D. Wis.). The court initially granted the motion on the ground that the district court erred by sentencing him as a "career offender" under § 4B1.1 of the United States Sentencing Guidelines. The Seventh Circuit reversed, *United States v. Coleman*, 763 F.3d 706 (7th Cir. 2014), *cert. denied*, — U.S. —, 2015 WL 730940 (March 23, 2015), remanded the case for further proceedings, and this court then denied Coleman's remaining claims for ineffective assistance of counsel on the part of Coleman's trial and appellate attorneys. (Dkt. #22.)

On July 8, 2015, Coleman filed a timely motion for reconsideration pursuant to Fed. R. Civ. P. 59(e), requesting that the court reconsider: (1) his ineffective assistance of counsel arguments; and (2) his sentence in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). As he has not pointed to an error of law or fact, or a change in law that affects the court's order denying § 2255 relief, this latest motion will also be denied.

1

FACTS[*]

Coleman pled guilty to possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).   For purposes of sentencing, the Probation Office determined that Coleman possessed 121.939 grams of crack cocaine, which warranted a base level score of 32 under USSG § 2D1.1.   With a 2-level increase for having a firearm in proximity to the drugs and a 3-level reduction for acceptance of responsibility, Coleman's total offense score was adjusted to 31.   Because he had a Criminal History Category of V, Coleman faced an imprisonment range of 140 and 175 months under the Guidelines.

In addition, the Probation Office also found that Coleman was subject to an additional enhancement as a "career offender" under USSG § 4B1.1.   A defendant is a career offender, and subject to an enhanced sentence under § 4B1.1(a), if the following criteria are met: "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."   USSG § 4B1.1.   A "crime of violence" is defined in Guideline § 4B1.2(a) to mean "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

---

[*] The court previously set forth the procedural history leading up to Coleman's November 2, 2007, sentence.   (Dkt. #22.)   What follows are only the factual details relevant to the arguments in his pending motion.

Of Coleman's prior felony convictions, the Probation Office found that the following qualified as a controlled substance offense and a crime of violence, respectively, for purposes of the career-offender enhancement:   (1) possession with intent to distribute cocaine base; and (2) sexual assault of a child in violation of Wis. Stat. § 948.02(2).   With the career-offender enhancement, Coleman moved up to a Criminal History Category VI, and to a recommended range of imprisonment under the advisory guidelines of 188 to 235 months.

At sentencing, then-presiding Judge John C. Shabaz agreed that Coleman was a career offender and applied the enhancement under §  4B1.1.   Coleman's trial attorney objected that Coleman's criminal history score and placement in Criminal History Category VI overstated his record because he was not a "violent offender."   His attorney further argued that the two crimes were eleven and twelve years old, and that classifying him as a career offender went "beyond the purposes of sentencing."   (Crim. R., Sent. Tr. (dkt. #29), at 7-8.)   The district court overruled those objections, ultimately finding that Coleman "adequately depicts what a career offender is."   (*Id*.)   As a result, the court sentenced Coleman near the upper end of the advisory guideline range -- 225 months in prison to be followed by a five-year term of supervised release.

On direct appeal, Coleman argued that he was entitled to resentencing under *United States v. Kimbrough*, 552 U.S. 85 (2007), which recognized a lower range of punishment for certain convictions involving the possession of crack cocaine.   As a career offender, however, the Seventh Circuit found Coleman ineligible for relief under *Kimbrough* and affirmed the conviction in an unpublished opinion.  *See United States v. Coleman*, 349 F. App'x 109, 2009 WL 3427549 (7th Cir. Oct. 26, 2009).   Coleman did not petition for a writ of certiorari from

that decision, and his conviction became final on January 26, 2010.

In his § 2255 motion, Coleman maintained that he was improperly classified as a career offender.   Relying on a change in the law that occurred after his sentencing and appeal, Coleman argued that his prior conviction for second-degree sexual assault of a child under Wis. Stat. §  948.02(2) does not qualify as a crime of violence for purposes of § 4B1.1, and that he was therefore not eligible for the career offender enhancement.   *See United States v. McDonald*, 592 F.3d 808 (7th Cir. 2010) (second-degree sexual assault of a child under Wis. Stat. §  948.02(2) not a "crime of violence" for purposes of U.S.S.G. §  2K2.1(a), which has the same meaning under § 4B1.2, the career-offender guideline).   Coleman argued that his attorneys were deficient in failing to object on the basis that he was entitled to relief under §  2255.

The court initially granted Coleman's motion on the ground that (1) the "categorical approach" to evaluating prior crimes used in *McDonald* should apply, and (2) Coleman should not have been classified as a career offender or subjected to enhancement under § 4B1.1. (Dkt. #43, at 8-10.)   The court did not, however, reach the ineffective assistance of counsel arguments.   The Seventh Circuit reversed, concluding that errors in applying the guidelines do not generally rise to the level of a miscarriage of justice that would permit relief under § 2255. *Coleman*, 763 F.3d at 708-09

After remand, this court also rejected Coleman's remaining argument that his trial and appellate counsel were deficient in failing to object that he was improperly classified as a career offender on the ground that his sexual assault crime did not constitute a crime of violence. (Dkt. #22.)   The court reasoned that at the time of Coleman's 2007 sentencing and 2009 appellate decision, it was settled law in this circuit that:   sexual assault in violation of Wis.

4

Stat. § 948.02(2) was a crime of violence, *see United States v. Shannon*, 110 F.3d 382 (7th Cir. 1997) (en banc); and (2) the Seventh Circuit only concluded that the crime did not qualify as a crime of violence in 2010, *see McDonald*, 592 F.3d 808.   The court further reasoned that the sexual assault crime described in the PSR would not have "readily appeared to qualify as non-violent," and regardless his attorneys' failure to anticipate that change did not amount to a deficient performance.   (Dkt. #22 at 5-6.)

This court's decision was issued on June 20, 2015.   On June 26, 2015, the United States Supreme Court held that imposing an increased sentence under the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(c)(1), violates the due process clause of the Constitution because the provision is unconstitutionally vague.   *United States v. Johnson*, 135 S. Ct. 2551 (2015).   On July 8, 2015, Coleman filed this pending motion for reconsideration.[1]

OPINION

A court will grant a motion under Rule 59(e) where there is newly discovered evidence, an intervening change in law, or a manifest error of law or fact.   Federal Rule of Civil Procedure 59(e) "enables the court to correct its own errors and thus avoid unnecessary appellate procedures."   *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012).   To prevail on

---

[1] As part of its response, the government moved to expand the record (dkt. #29) to add the record documents from Coleman's state court sexual-assault conviction.   Rule 7 of the Federal Rules Governing Proceedings Under 28 U.S.C. § 2255 permits the court to expand the record at its discretion.   The government claims that the details of the sexual assault conviction are relevant to that information available to Coleman's counsel at the time of his sentencing and appeal.   As the government notes, however, the details of the crime were also summarized in the Presentence Report.   (PSR, (dkt. #24) ¶ 36.)   To the extent that information is relevant now, years after the parties' initially argued this motion, the details in the PSR are sufficient for this court to evaluate Coleman's request for reconsideration.   Nevertheless, to the extent it may be relevant as part of any appellate review, the government's motion will be granted.

a motion under Rule 59(e), the moving party must identify an error of law that merits reconsideration of the judgment. *See Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008); *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511-12 (7th Cir. 2007).   A Rule 59(e) motion is not intended as a vehicle to relitigate matters already disposed of or to raise novel theories. *Federal Deposit Insurance Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986).   As such, a Rule 59(e) movant "must clearly establish either a manifest error of law or must present newly discovered evidence." *Id.*   In this context, a "manifest error" means "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

Here, the petitioner, Quadale Coleman, contends that:   (1) the court erred in finding that Coleman had not established ineffective assistance of counsel; and (2) the recent United States Supreme Court decision in *Johnson* constitutes a change in the law that warrants resentencing.   The court addresses both contentions below.

## I.   Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to have the assistance of counsel at trial.   Claims for ineffective assistance of counsel are analyzed under the now well-established standard in *Strickland v. Washington*, 466 U.S. 668 (1984).   To prevail under this standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.   *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000).   "Unless a defendant makes both showings, it cannot be said that the conviction  .  .  .  resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

6

Coleman takes issue with the court's finding that his attorneys were not deficient in failing to anticipate changes in the law. Coleman claims that the court misinterpreted his argument, asserting that he actually argued both his trial and appellate attorneys failed to effectively utilize then existing case law.

### A.      Trial Counsel's Performance

In his initial motion, Coleman took issue with his trial counsel's failure to challenge his career offender designation under *United States v. Shannon*, 110 F.3d 382 (7th Cir. 1997) (en banc). In *Shannon*, the Seventh Circuit held that a conviction for sexual assault of a 13 years old in violation of Wis. Stat. § 948.02(2) was a crime of violence. *Id.* at 387-88. In reaching this conclusion, the court focused on the fact that a victim of that specific age lacks accurate knowledge about disease and fertility risks involved in intercourse. *Id.* at 387-88. In doing so, the court explicitly left open the question of whether a conviction under the same statute where the victim was over the age of 13 constitutes a crime of violence, commenting that the "Wisconsin statute covers a lot of ground, and some of it may not be crime of violence ground." *Id.* at 387. Because his victim was all of 14 years of age, Coleman claims that his attorney should have argued that in contrast to *Shannon*, his conviction would not qualify as a crime of violence under the guidelines.

In previously rejecting this argument, this court held the law in this circuit was settled at the time of Coleman's sentence and direct appeal that sexual assault of a child in violation of Wis. Stat. § 948.02(2) was a crime of violence. (Dkt. #22, at 5.) Moreover, the court also found "the sexual assault described in the PSR is not one that would have readily appeared to qualify as non-violent." (Dkt. #22, at 5.) Nevertheless, Coleman again argues in his motion

7

to reconsider that:  (1) *Shannon* had rejected the suggestion that violations of Wis. Stat. § 948.02(2) were crimes of violence; and (2) this court also erred in referencing the facts related to the sexual assault crime in commenting that it qualified as a crime of violence.

Coleman is correct insofar as the law being unsettled at the time of his sentencing with regard to whether all sexual assaults under Wis. Stat. § 948.02(2) constituted a crime of violence, but is incorrect that *Shannon* was controlling precedent that his attorney should have invoked.   The *Shannon* court itself noted that its determination was difficult and may very well have been incorrect.  *Id.* at 387-89.   The *Shannon* decision, therefore, did not make it apparent that Coleman's prior conviction for sexual assault of a 14-year-old under Wis. Stat. § 948.02(2) was not a crime of violence under the guidelines, and his attorney's failure to make an argument under *Shannon* was, therefore, not objectively unreasonable.[2]

Further, Coleman's claim that this court should not have expressly referenced the PSR's description of the sexual assault conviction in unpersuasive.  For one, this was a comment made by *me* in review of Coleman's collateral attack, not by the sentencing judge nor any attorney at the time of sentencing, and Coleman does not argue that his trial attorney should have made an argument challenging the PSR's description of his underlying sexual assault conviction.

To the extent Coleman is really arguing that this court misconstrued the applicable law in evaluating his trial counsel's performance by reference to the PSR comment, that argument

---

[2]  If the argument had been made, defense counsel may have been concerned that the court would have *applied* rather than *distinguished* the reasoning in *Shannon* to its analysis of Coleman's conviction, concluding not only that the difference between a 13 and 14 year old victim was not materially significant and that the sexual assault conviction did constitute a crime of violence, but that such a ruling would have solidified any inclination the court might have had to enhance Coleman's punishment.

is also unpersuasive.   While Coleman suggests that when he was sentenced, the law permitted courts to only consider the language of the statute and not the underlying facts of the offense to determine whether it qualified as a crime of violence, the law was actually inconsistent in November of 2007, at least with respect to offenses under Wis. Stat. § 948.02.   The Seventh Circuit had decided in *United States v. Newbern*, 479 F.3d 506 (7th Cir. 2007), that details in the charging documents *should* be considered in assessing whether the offense of reckless discharge of a firearm constituted a crime of violence because the statute itself made it clear that the offense qualified as a crime of violence.   *Id.* at 510.   The court further stated that in deciding whether a conviction qualifies, "we start - and usually will end - with the elements of the statute of conviction and the facts as stated in the charging document."   *Id.* at 508.   Still, the court acknowledged that where the statutory elements and the content of the charging document do not resolve the issue because the statute is divisible, the court may look beyond the relevant statute and formal charge by considering "documents like plea agreements and transcripts of plea colloquies, or to admissions by the defendant."   *Id.* (citing *United States v. Jackson*, 177 F.3d 628 (7th Cir. 1999) (sentencing court is "ordinarily restricted to considering the statutory definition of the offense of conviction and the charging document")).

Moreover, as noted, while *Newbern* was available to the judge when Coleman was sentenced, that decision addressed a different statute, not Wis. Stat. § 948.02(2), and so it left open the question whether additional documents may be referenced in determining if a conviction under Wis. Stat. § 948.02(2) constitutes a crime of violence.   Indeed, the *Shannon* court *did* refer to the underlying facts of the offense, and *Newbern* did not overrule *Shannon*.

Even after Coleman's trial, the law remained unclear.   For example, the Seventh Circuit

decided *United States v. Templeton*, 543 F.3d 378 (7th Cir. 2008), which held that convictions for escape were not necessarily crimes of violence under the Guidelines.  In *Templeton*, the court applied *Taylor v. United States*, 495 U.S. 575 (1990), and *United States v. Shepard*, 544 U.S. 13 (2005), to conclude that in determining whether an offense is a crime of violence, "we must look at how an offense is defined by statute, not at what the offender did in fact" *unless* it is possible to violate a statute both "in a way" that does and does not constitute a crime of violence.  *Id.* at 383-84.

In 2009, in *United States v. Woods*, 576 F.3d 400 (7th Cir. 2009), the court outlined the confusion created by *Templeton,* acknowledging that some courts addressing indivisible statues had been considering documents that went beyond the statutory definition of the offense.  *Id.* at 405.   In particular, the *Woods* court criticized the approach used in *Shannon*, acknowledging that in another decision proceeding *Shannon*, the Seventh Circuit had even held that "a violation of Wis. Stat. § 948.02(2) is not necessarily a crime of violence."  *Id.* at 412 (citing *Xiong v. I.N.S.*, 173 F.3d 601, 607 (7th Cir. 1999) (consensual sex between 18-year-old and his 15-year-old girlfriend was not a crime of violence)).   Yet the court did not overrule *Shannon* at that point, and so even after that decision, the question of whether a violation of Wis. Stat. § 948.02(2) qualified as a crime of violence remained unanswered.   And so it remained until *United States v. McDonald*, 592 F.3d 808 (7th Cir. 2010), at which time the Seventh Circuit held that a conviction under Wis. Stat. §  948.02(2) was not divisible, and that *Shannon* was invalid.  Plus, it took three more years for the Supreme Court to decide definitively in *Descamps v. United States*, 133 S. Ct. 2276 (2013), to address the distinction between divisible and indivisible statutes identified in *Woods*.

10

Given this history, there can be little argument that the law as to whether § 948.02(2) constituted a crime of violence was confusing at the time of Coleman's sentencing in 2007, but the Seventh Circuit's decision in *Groves v. United States*, 755 F.3d 588 (7th Cir. 2014), removes all doubt.   In that case, the court noted that until "at least 2009, confusion existed regarding the approach sentencing courts must take in determining whether a prior conviction fits the definition of a 'crime of violence.'" *Id*. at 593.   The court went on to hold in *Groves* that due to this confusion, the defense counsel's failure to object to the PSR's characterization of defendant's prior burglary conviction as a crime of violence did not constitute a deficient performance.   *Id.* at 592.   For the same reason, Coleman's argument fails with respect to this court's comment about the PSR.

### B.     Appellate Counsel's Performance

Coleman also contends that this court erred in failing to address separately his arguments that his appellate counsel was deficient in failing to cite to *Begay v. United States*, 553 U.S. 137 (2008), and *Woods*.   Although the court's order did not differentiate between the performance of his appellate counsel, the *Begay* and *Woods* decisions only highlight the murkiness of the law at the time of Coleman's appeal.

In *Begay*, the Supreme Court held that a crime falls under the residual clause of the ACCA only if it is similar to the purposeful, violent and aggressive offenses expressly listed in that subsection -- burglary of a dwelling, arson, extortion and the use of explosives.   *Id.* at 144-45.   For this reason, the *Begay* court limited the use of strict liability offenses under the ACCA.   According to Coleman, because second-degree sexual assault of a crime is a strict liability offense, and *Begay* was decided before his appellate counsel filed his brief, his appellate

11

counsel was deficient in failing to raise that argument.

While this argument may have been available on appeal, the decision in *Begay* was not necessarily determinative of Coleman's status as a career offender, because it did not address convictions under Wis. Stat. § 948.02(2).   Indeed, the Seventh Circuit highlighted this fact in 2009 in *Woods*, acknowledging (but explicitly choosing not to overrule) *Shannon*.   As noted above, the court cited to both *Shannon*, in which a violation of Wis. Stat. § 948.02(2) *did* constitute a crime of violence, and *Xiong*, in which a violation of the same statute *did not*.   In citing both decisions, the Seventh Circuit recognized that the law on the issue remained unclear, but it explicitly did not hold that *any* violation under that statute constituted a crime of violence.   As noted above, the Seventh Circuit did not clarify this issue until it decided *McDonald* on January 25, 2010, the day before Coleman's appeal became final.   Accordingly, Coleman has not established deficient performance on the part of his attorneys, and the court need not address the prejudice prong of the *Strickland* analysis.

## II.   *Johnson v. United States*

Coleman separately contends that the Supreme Court's decision in *Johnson* is an intervening change in the law that demonstrates that his career offender designation is improper.   In *Johnson*, the defendant was sentenced under the ACCA, § 924(e)(1), not under USSG § 4B1.2, as Coleman was.   Even so, both provisions allow a court to find a criminal defendant a career offender if, among other things, the defendant has a number of past felonies for violence or a serious drug offense.   Under § 924(e)(1), the number of prior felonies must be three; under the Guidelines, the number of prior felonies must be two.   Both provisions use the same definition for "violent felony" (§ 924(e)(B)) or "crime of violence" (§ 4B1.2) -- one that

12

carries a penalty of more than one year and

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

§ 924(e)(2)(B); § 4B1.2 (emphasis added).  The *Johnson* Court held the italicized language unconstitutional.

The Supreme Court has since held that its decision in *Johnson* should have retroactive effect.  *Welch v. United States*, No. 15-6418, 2016 WL 1551144, at *8 (U.S. Apr. 18, 2016) ("*Johnson* affected the reach of the underlying statute rather than the judicial procedures by which the statute is applied.  *Johnson* is thus a substantive decision and so has retroactive effect under *Teague* in cases on collateral review."); *see also Price  v. United States*, 795 F.3d 731, 734 (7th Cir. 2015) ("There is no escaping the logical conclusion that the Court itself made *Johnson*  categorically retroactive to cases on collateral review.").   To date, neither the Supreme Court nor this circuit has held that *Johnson* applies to similar language in the Guidelines.[3]   This

---

[3] After the Supreme Court issued the *Johnson* decision, it released multiple short opinions in similar cases that suggested *Johnson* does implicate career offender designations under the Guidelines.   The issue before the Court in each was whether career offenders or Guidelines' "crime of violence" residual clause was unconstitutional for the same reasons as described in *Johnson*.   *Beckles v. United States*, 135 S. Ct. 2928 (2015); *Cooper v. United States*, 135 S. Ct. 2938 (2015); *Denson v. United States*, 135 S. Ct. 2931 (2015); *Jones v. United States*, 135 S. Ct. 2944 (2015); *Maldonado v. United States*, 135 S. Ct. 2929 (2015); *Smith v. United States*, 135 S. Ct. 2930 (2015); *Talmore v. United States*, 135 S. Ct. 2937 (2015).   In each, the Court remanded the cases for further consideration in light of its ruling in *Johnson*.   Recent Seventh Circuit decisions also suggest that *Johnson* may apply to Guidelines sentences, but with limitation.   For one, in *Ramirez v. United States*, 799 F.3d 845, 856 (7th Cir. 2015), the court stated that it was proceeding "on the assumption that the Supreme Court's reasoning [in *Johnson*] applies to section 4B1.2 as well," but the court left analysis of this issue to another day.   *Id.*   Similarly, while not addressing the issue head-on, the court has permitted multiple, successive motions to vacate under § 2255, where the petitioner had been sentenced under the career-offender Guidelines, § 4B1.2(a).   *Storke v. United States*, No. 15-2687, 2015 WL 5915990 (7th Cir. Aug. 10, 2015); *Best v. United States*, No. 15-2417, slip op. (7th Cir.

court will nevertheless assume that it does, based both on the trend in case law,[4] and the fact that the government appears to concede as much in acknowledging that *Johnson* held that the residual clause is void "in all its applications."   *Johnson*, 135 S. Ct. at 2561.[5]

   Assuming even further that *Johnson* applies *retroactively* to guidelines sentences, however, binding Seventh Circuit precedent still precludes relief under § 2255, because Coleman was sentenced based on the advisory guidelines.   In particular, the Seventh Circuit's two decisions in *Hawkins v. United States*, as well as its decision in Coleman's appeal, control.   In *Hawkins*,

---

Aug. 5, 2015).   On the other hand, the Seventh Circuit has indicated that career offender designations under the residual clause of § 4B1.2 will not always be unconstitutional.   *United States v. Rollins*, No. 13-1731, slip op. at 2, 12 (7th Cir. Sept. 1, 2015) (a prior conviction for possession of short barreled shotgun continued to count as a predicate conviction under the Guidelines, even after *Johnson*, because the sentencing commission had classified the offense as a crime of violence in the Guidelines and the commission's application notes "are 'treated as an agency's interpretation of its own legislative rule[s]'").

[4] The Tenth, Eighth and Sixth Circuits have held that *Johnson* does apply to sentences under the residual clause of the Guidelines. *See United States v. Madrid*, No. 14-2159, 2015 WL 6647060, at *6 (10th Cir. Nov. 2, 2015) ("The concerns about judicial inconsistency that motivated the Court in *Johnson* lead us to conclude that the residual clause of the Guidelines is also unconstitutionally vague."); *United States v. Taylor,* 803 F.3d 931, 932 (8th Cir. 2015) ("[T]hat the guidelines cannot be unconstitutionally vague because they do not proscribe conduct is doubtful after *Johnson* "); *United States v. Franklin,* No. 14–5093, 2015 WL 4590812, at *11 (6th Cir. July 31, 2015) (unpubl.) (vacating and remanding an enhancement under the residual clause of the Guidelines "in light of Johnson"); *United States v. Harbin,* No. 14–3956, 2015 WL 4393889, at *1 (6th Cir. July 20, 2015) (unpubl.) (defendant "is entitled to the same relief as offenders sentenced under the residual clause of the ACCA").   The Eleventh Circuit has taken the opposite view.   *United States v. Matchett*, No. 14-10396, 2015 WL 5515439 (11th Cir. Sept. 21, 2015) ("The Armed Career Criminal Act defines a crime and fixes a sentence, see 18 U.S.C. § 924(e), but the advisory guidelines do neither.").   The Tenth Circuit subsequently pointed out that the Eleventh Circuit's *Marchett* decision relied on cases that predate *Peugh* and *Johnson,* and that the Eleventh Circuit did not address the "arbitrary enforcement by judges" with which *Johnson* was concerned.   *See Madrid*, 2015 WL 6647060, at *6.

[5] On January 8, 2016, the Sentencing Commission adopted a preliminary amendment to U.S.S.G. § 4B1.2 that deletes the residual clause.   See Amendment to the Sentencing Guidelines (Preliminary), available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20160108_RF.pdf (last accessed May 9, 2016).   This amendment is scheduled to go into effect August 1, 2016.

14

706 F.3d 820 (7th Cir. 2013), the Seventh Circuit held that a challenge to an erroneous career offender designation was not cognizable under § 2255 because of the advisory nature of the guidelines and the fact that the sentence would still have been available if he were resentenced. *Id.* at 824-25.   Following this decision, the petitioner moved for rehearing in light of the Supreme Court's decision in *Peugh v. United States,* 133 S. Ct. 2072, 2082 (2013).   *See Hawkins v. United States*, 724 F.3d 915 (2013).   In *Peugh*, Supreme Court had held that the Guidelines are subject to constitutional challenges "notwithstanding the fact that sentencing courts possess discretion to deviate from the recommended sentencing range."   *Peugh*, 133 S. Ct. at 2082 (stating that the Guidelines are the "lodestone of sentencing").   Specifically, the Court held that a sentence violates the Constitution's ex post facto clause if in calculating a defendant's advisory Guidelines range, the judge calculated the range in effect when he sentenced the defendant, rather than when the defendant committed the crime, if the earlier range was lower.

Even in light of *Peugh,* the Seventh Circuit denied the request for rehearing for multiple reasons:   (1) the *Peugh* decision involved a constitutional error while the *Hawkins* decision involved a miscalculated Guidelines range; (2) the *Peugh* legal standard was lower than the standard for postconviction relief, which requires a showing of "actual prejudice"; and (3) it was unclear whether the *Peugh* decision was to apply retroactively.   Of particular relevance here is the court's second line of reasoning -- that postconviction relief is proper "when for example the judge imposes a sentence that he had no authority to impose," and that "it doesn't follow that postconviction relief is proper just because the judge, though he could lawfully have imposed the sentence that he did impose, might have imposed a lighter sentence had he calculated the

Guidelines sentencing range correctly." *Hawkins*, 724 F.3d at 917.

The Seventh Circuit's decision in Coleman's appeal of his § 2255 motion relied heavily on *Hawkins* in reinforcing the notion that a miscarriage of justice does not occur when a sentencing error stems from the advisory guidelines and is below the statutory maximum. *Coleman*, 763 F.3d at 708-09.   In rejecting Coleman's argument that his sentence would have been lower without the career offender deadline, the court also noted that the sentencing transcript showed that Judge Shabaz was fully aware *both* that the guidelines were discretionary and that his sentence was ultimately to be imposed based on the criteria in § 3553(a).

Still, Coleman argues that the *Johnson* decision establishes that he has suffered a constitutional violation, even though he is unable to distinguish the *Hawkins* decisions or his own appellate decision.   In particular, he simply fails to address the reasoning in *Hawkins* emphasizing the high burden of proof required by § 2255, likely because his sentence was not actually unlawful (*i.e.*, fell under the statutory maximum).[6]

## III.    Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner.   To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were

---

[6] Even though Coleman's sentence involved a constitutional violation, and not just a sentencing error as in *Hawkins,* this court is bound by the Seventh Circuit precedence foreclosing § 2255 relief in these circumstances.

16

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).   Here, although the *Hawkins* and *Coleman* decisions appear to control, they do not squarely resolve all of petitioner's issues.   As Coleman has presented well-reasoned and thoughtful arguments that deserve consideration on appeal, the court will grant petitioner a certificate of appealability.

## ORDER

IT IS ORDERED that:

1.    The government's Motion to Expand the Record (dkt. #29) is GRANTED.

2.    Petitioner Quadale Coleman's Motion for Reconsideration (dkt. #24) is DENIED.

3.    A Certificate of Appealability is GRANTED.

Entered this 9th day of May, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge